Slip Op. 16 - 72

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CAPELLA SALES & SERVICES LTD.<br><br>    Plaintiff,<br><br>      v.<br><br>UNITED STATES,<br><br>    Defendant. | Before: Donald C. Pogue,<br>     Senior Judge<br><br>Court No. 14-00304 |

OPINION

[Action dismissed for failure to state a claim upon which relief can be granted.]

Dated: July 20, 2016

   Irene H. Chen, Chen Law Group LLC, of Rockville, MD, and Mark B. Lehnardt, Lehnardt & Lehnardt LLC, of Liberty, MO, for the Plaintiff.

   Aimee Lee, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for the Defendant.  Also on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Assistant Director. Of counsel were Jessica M. Link, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC, and Edward N. Mauer, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs & Border Protection, of New York, NY.

   **Pogue, Senior Judge**: In this action, Plaintiff Capella

Sales & Services Ltd. ("Plaintiff" or "Capella")[1] challenges the

---

[1] Capella is "an importer of aluminum extrusions" from the People's Republic of China ("PRC"). Am. Compl., ECF No. 32-1, at ¶ 45.

assessment of countervailing duties ("CVD"), at the rate of 374.15 percent ad valorem, on four of its entries of aluminum extrusions from the PRC.  The U.S. Department of Commerce ("Defendant" or "Commerce") assessed these duties by applying the all-others rate calculated in <u>Aluminum Extrusions from the [PRC]</u>, 76 Fed. Reg. 18,521 (Dep't Commerce Apr. 4, 2011) (final affirmative countervailing duty determination) ("<u>Final CVD Determination</u>").  In levying such duties, Commerce did not impose the (lower) "lawful [all-others] rate" calculated subsequently on remand and redetermination following litigation of the <u>Final CVD Determination</u> by parties other than Capella.[2] Am. Compl., ECF No. 32-1, at ¶¶ 50, 52.

Defendant moves to dismiss this action pursuant to USCIT Rule 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, pursuant to USCIT Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Def.'s Mot. to Dismiss & Mot. for Summ. J., ECF No. 40 ("Def.'s Br.").[3]

---

[2] <u>See</u> <u>MacLean-Fogg Co. v. United States</u>, Consol. Ct. No. 11-00209.

[3] Defendant also moves for summary judgment pursuant to USCIT Rule 56. Def.'s Br., ECF No. 40, at 27-35.  Because Plaintiff's claim is, as explained below, dismissed pursuant to USCIT Rule 12(b)(6), the court does not reach the issue of whether summary judgment is proper.  Similarly, because Plaintiff's complaint is dismissed, Plaintiff's Motion for Summary Judgement, ECF No. 54, and Defendant's Motion to Strike or Alternatively, to Suspend Defendant's Response to Plaintiff's Motion for Summary Judgment, ECF No. 56, are denied as moot.

Because Capella's complaint challenges Commerce's administration and enforcement of a CVD rate, the court has jurisdiction under 28 U.S.C. § 1581(i) (2012). However, because Plaintiff did not participate in, and have liquidation of its entries enjoined pursuant to, the litigation that resulted in the "lawful rate" calculated on remand and redetermination, it cannot claim entitlement to that rate. See 19 U.S.C. §§ 1516a(c)(1), 1516a(e) (2012); Am. Compl., ECF No. 32-1, at ¶¶ 7, 10. Plaintiff has, therefore, failed to state a claim upon which relief can be granted. USCIT Rule 12(b)(6). Accordingly, Defendant's motion to dismiss under USCIT Rule 12(b)(6) is granted.

**BACKGROUND**

This case arises from Commerce's CVD investigation of aluminum extrusions from the PRC. Aluminum Extrusions from the [PRC], 75 Fed. Reg. 22,114 (Dep't Commerce Apr. 27, 2010) (initiation of countervailing duty investigation).[4] After investigation and comment, Commerce made a final affirmative finding and calculated an all-others rate of 374.15 percent ad valorem. Final CVD Determination, 76 Fed. Reg. at 18,523.

Following the International Trade Commission's final affirmative finding of injury, Commerce issued a CVD order on

---

[4] The period of investigation was January 1, 2009, through December 31, 2009. Id. at 22,114.

aluminum extrusions from the PRC. Aluminum Extrusions from the
[PRC], 76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011)
(countervailing duty order) ("CVD Order").  Pursuant to this
Order, Commerce instructed U.S. Customs and Border Protection
("Customs" or "CBP") to collect cash deposits for non-
individually investigated companies at the all-others rate of
374.15 percent ad valorem (the investigation rate). Id. at
30,655.

On June 23, 2011, the plaintiffs in MacLean-Fogg v.
United States, Consol. Ct. No. 11-00209, challenged Commerce's
Final CVD Determination pursuant to 19 U.S.C.
§§ 1516a(a)(2)(A)(i)(II), 1516a(a)(2)(B)(i).[5]  The ensuing
litigation generated two redeterminations from Commerce[6] and four
opinions from this Court[7] – the last one affirming Commerce's
calculation of an 137.65 percent ad valorem all-others rate,

---

[5] See Summons, Consol. Ct. No. 11-209, ECF No. 1; Compl., Consol.
Ct. No. 11-209, ECF No. 6; see also Order, Consol. Ct. No. 11-
209 ECF No. 26 (consolidation order).  This Court had
jurisdiction under 28 U.S.C. § 1581(c). See MacLean-Fogg Co. v.
United States, __ CIT __, 836 F. Supp. 2d 1367, 1369-70 (Apr. 4,
2012).

[6] [First] Results of Redetermination Pursuant to Ct. Remand,
Consol. Ct. No. 11-209, ECF Nos. 62-1 (pub. ver.) & 63 (conf.
ver.); [Second] Results of Redetermination Pursuant to Ct.
Remand, Consol. Ct. No. 11-209, ECF No. 80-1.

[7] MacLean-Fogg Co. v. United States, __ CIT __, 836 F. Supp. 2d
1367, on reconsideration in part, __ CIT __, 853 F. Supp. 2d
1253 (2012); MacLean-Fogg Co. v. United States, __ CIT __, 853
F. Supp. 2d 1336 (2012); MacLean-Fogg Co. v. United States, __
CIT __, 885 F. Supp. 2d 1337 (2012).

MacLean-Fogg Co. v. United States, 885 F. Supp. 2d at 1339.
This Court's fourth opinion was appealed to the Court of Appeals
for the Federal Circuit ("CAFC"), which reversed and remanded.[8]
The CAFC's decision was followed by two more redeterminations by
Commerce[9] and three additional opinions from this Court[10] – the
last, issued on October 23, 2015, affirming Commerce's final
redetermination.  The final, redetermined all-others rate was
7.37 percent ad valorem (the post-MacLean-Fogg rate). [Fourth]
Results of Redetermination Pursuant to Ct. Remand, Consol. Ct.
11-209, ECF Nos. 124-1 (conf. ver.) & 125-1 (pub. ver.).

        While the MacLean-Fogg litigation was proceeding,
Commerce, on May 1, 2012, published notice of the opportunity
for interested parties to request administrative review of the
CVD Order for entries made between September 7, 2010 and
December 31, 2011 (the first period of review). Antidumping or
Countervailing Duty Order, Finding, or Suspended Investigation;
Opportunity to Request Administrative Review, 77 Fed. Reg.

---

[8] MacLean-Fogg Co. v. United States, 753 F.3d 1237 (Fed. Cir.
2014).

[9] [Third] Results of Redetermination Pursuant to Ct. Remand,
Consol. Ct. No. 11-209, ECF No. 108-1; [Fourth] Results of
Redetermination Pursuant to Ct. Remand, Consol. Ct. No. 11-209
ECF Nos. 124-1 (conf. ver.) & 125-1 (pub. ver.).

[10] MacLean-Fogg Co. v. United States, __ CIT __ , 32 F. Supp. 3d
1358 (2014); MacLean-Fogg Co. v. United States, __ CIT __, 100
F. Supp. 3d 1349 (2015); MacLean-Fogg Co. v. United States, __
CIT __, 106 F. Supp. 3d 1356 (2015).

25,679, 25,680 (Dep't Commerce May 1, 2012) ("AR1 Opportunity").

Commerce indicated that, absent a timely request for review, it

would instruct Customs to assess countervailing duties "on those

entries [for which review was not requested] at a rate equal to

the cash deposit of (or bond for) estimated [] countervailing

duties required . . . at the time of entry, or withdrawal from

warehouse, for consumption. . . ." Id. at 25,681.  Commerce

subsequently initiated the first administrative review.

Initiation of Antidumping and Countervailing Duty Administrative

Reviews and Request for Revocation in Part, 77 Fed. Reg. 40,565,

40,572 (Dep't Commerce July 10, 2012) ("AR1 Initiation").

Commerce then issued automatic liquidation instructions for

subject entries made during the period of review but for which

administrative review had not been requested. CBP Message

No. 2209305 (July 27, 2012), reproduced in Compl., ECF No. 2-1

at attach. 6.

On December 14, 2012, following this Court's

affirmance of Commerce's [Second] Results of Redetermination

Pursuant to Court Remand, Consol. Ct. No. 11-209, ECF No. 80-1,

see MacLean-Fogg, 885 F. Supp. 2d at 1339, but prior to the

appeal of the that decision to the CAFC, see Notice of Appeal

(Jan. 28, 2013), Consol. Ct. No. 11-209, ECF No. 89, Commerce

issued a Timken Notice[11] giving effect to the [Second] Results of

Redetermination Pursuant to Ct. Remand, Consol. Ct. No. 11-209,

ECF No. 80-1, as affirmed in MacLean-Fogg, 885 F. Supp. 2d 1337.

The Timken Notice set the all others cash deposit rate, as it

was then calculated pursuant to the litigation, at 137.65

percent ad valorem with an effective date of December 10, 2012.

Timken Notice, 77 Fed. Reg. at 74,466, 74,466-67.  Commerce then

instructed Customs to require, for "all others," "a cash deposit

equal to the rate" of 137.65 percent ad valorem for "shipments

of aluminum extrusions from the [PRC] entered, or withdrawn from

warehouse, for consumption on or after December 10, 2012."

CBP Message No. 2355304 (Dec.  20, 2012), reproduced in Compl.,

ECF No. 2-1 at attach. 8.

       While the MacLean-Fogg litigation was still

---

[11] See Aluminum Extrusions from the [PRC], 77 Fed. Reg. 74,466,
74,467 (Dep't Commerce Dec. 14, 2012) (notice of court decision
not in harmony with final affirmative CVD determination and
notice of amended final affirmative CVD determination) ("Timken
Notice") ("In its decision in [Timken Co. v. United States, 893
F.2d 337, 341 (Fed. Cir. 1990)] as clarified by [Diamond
Sawblades Mfrs. Coal. v. United States, 626 F.3d 1374 (Fed. Cir.
2010)], the CAFC has held that, pursuant to [19 U.S.C.
§ 1516a(e)], [Commerce] must publish a notice of a court
decision that is not 'in harmony' with a Department
determination and must suspend liquidation of entries pending a
'conclusive' court decision. The CIT's November 30, 2012,
judgment in [MacLean-Fogg, 885 F. Supp. 2d 1337] sustaining the
Department's decision to designate the all others rate as equal
to the preliminary rate it calculated for the mandatory
respondents (137.65 percent ad valorem), constitutes a final
decision of that court that is not in harmony with the
Department's Final Determination.").

proceeding, on May 1, 2013, Commerce published notice of the
opportunity for interested parties to request administrative
review of the CVD Order for entries made between January 1, 2012
and December 31, 2012 (the second period of review). Antidumping
or Countervailing Duty Order, Finding, or Suspended
Investigation; Opportunity To Request Administrative Review,
78 Fed. Reg. 25,423, 25,424 (Dep't Commerce May 1, 2013) ("AR2
Opportunity").  Commerce again indicated that, absent a timely
request for review, it would instruct Customs to assess
countervailing duties "on those entries at a rate equal to the
cash deposit of (or bond for) estimated [countervailing duties]
required . . . at the time of entry, or withdrawal from
warehouse, for consumption and to continue to collect the cash
deposit previously ordered." Id. at 25,425.  Commerce
subsequently initiated the second administrative review.
Initiation of Antidumping and Countervailing Duty Administrative
Reviews and Request for Revocation in Part, 78 Fed. Reg. 38,924,
38,935 (Dep't Commerce June 28, 2013) ("AR2 Initiation").
Commerce then issued automatic liquidation instructions for
subject entries made during the period of review for which
administrative review had not been requested. CBP Message
No. 3197305 (July 16, 2013), reproduced in Compl., ECF No. 2-1
at attach. 10.

        Meanwhile, seemingly unaware of the various

administrative proceedings and litigation surrounding aluminum

extrusion from the PRC, Capella made four entries of subject

merchandise – two on November 28, 2011, during the first period

of review, and two, on March 20 and June 16, 2012, during the

second period of review. Am. Compl., ECF No. 32-1, at ¶ 7; CF-

7501's, reproduced in Compl., ECF No. 2-1 at attach. 5; Protest,

4601-14-101149 (July 14, 2014), reproduced in Compl., ECF

No. 2-1 at attach. 15.  Capella mistakenly entered its

merchandise as Type 01 (i.e., not subject to AD or CVD duties)

rather than Type 03 (i.e., subject to AD or CVD duties).

Am. Compl., ECF No. 32-1, at ¶¶ 7, 10.[12]

        Capella did not participate in the investigation or

the appeal of the CVD Order. Am. Compl., ECF No. 32-1, at ¶ 7

("Capella was unaware of the CVD Order.").  Nor did Capella

participate in the first administrative review of that Order.

Id. at ¶ 10 ("[Capella] was not aware of," the review and

therefore "did not know to request a review").  And, despite

having received, months prior to Commerce's notice of

opportunity to request review, direct notice from Customs that

its four entries were properly classified as Type 03 and subject

---

[12] Capella blames its customs broker for the misclassification, Am. Compl, ECF No. 32-1, at ¶¶ 7, 10, however Capella remains liable for the actions of its broker, United States v. Fed. Ins. Co., 805 F.2d 1012, 1013 (Fed. Cir. 1986) ("[A] licensed broker is the agent of the importer, not of the government . . . .").

to the CVD Order, id. at ¶ 15[13]; see AR2 Opportunity, 78 Fed.

Reg. 25,423 (published May 1, 2013), Capella did not participate

in the second administrative review of the CVD Order, Am.

Compl., ECF No. 32-1, at ¶ 22.   Accordingly, Capella's four

entries, being covered by the CVD Order but not subject to any

administrative review or injunction in the pending the MacLean-

Fogg litigation, were subject to automatic liquidation. Id. at

¶¶ 13, 23.[14]

On November 18, 2014, following the CAFC's decision in

MacLean-Fogg, 753 F.3d 1237, Capella filed a summons and

complaint with this Court challenging the CVD rate assessed on

its entries, Summons, ECF No. 1; Compl., ECF No. 2.   Capella

argues that it was "arbitrary, capricious, and [an] abuse of

discretion, or otherwise not in accordance with law" for

Commerce to have applied the investigation's 374.15 percent ad

valorem rate rather than "the lawful rate" subsequently

determined through the MacLean-Fogg litigation. Am. Compl., ECF

No. 32-1, at ¶¶ 50, 52.   Specifically, Plaintiff makes two

---

[13] See also Notices of Action, reproduced in Compl., ECF No. 2-1
at attach. 7.

[14] Three of Capella's four entries have already been liquidated.
See Protest, 4601-14-101149 (July 14, 2014), reproduced in
Compl., ECF No. 2-1 at attach. 15 (protesting liquidation of the
November 28, 2011 and March 20, 2012 entries).   The fourth,
Capella's June 16, 2012, entry has had liquidation enjoined
pending this litigation. Order, Feb. 6, 2015, ECF No. 20
(granting consent motion for preliminary injunction).

challenges. First, Capella challenges Commerce's December 20, 2012, cash deposit instructions, arguing that Commerce failed to "us[e] its discretion" to apply the "lawful rate" retroactively, rather than only prospectively, to its entries. Am. Compl., ECF No. 32-1, at ¶ 50. Second, Capella challenges Commerce's July 27, 2012 and July 16, 2013 automatic liquidation instructions, again arguing that Commerce failed to "us[e] its discretion" to apply the "lawful rate" and for not ordering liquidation of Plaintiff's entries at the "lawful rate." Id. at ¶ 52.

The Defendant's motion to dismiss is now before the court.  Def.'s Br., ECF No. 40.

**DISCUSSION**

I.   Defendant's Motion to Dismiss Pursuant to USCIT Rule
     12(b)(1) For Lack of Subject Matter Jurisdiction[15]

Capella claims jurisdiction under 28 U.S.C. §§ 1581(i)(2) and 1581(i)(4), Am. Compl., ECF No. 32-1, at ¶ 33, framing its action as a challenge to Commerce's decision not to apply retroactively to Capella's entries the "lawful rate" calculated pursuant to the MacLean-Fogg litigation, id. at ¶¶ 50, 52. Defendant argues that the court does not have jurisdiction under § 1581(i) because Plaintiff should have and could have, like the plaintiffs in MacLean-Fogg, Consol. Ct. No.

---

[15] See USCIT R. 12(b)(1) ("[A] party may assert the . . . defense[] of. . . lack of subject matter jurisdiction [by motion].").

11-209, brought its claim as a challenge to the <u>Final CVD
Determination</u> pursuant to § 1581(c).[16] Def.'s Br., ECF No. 40, at
16-19.[17]

      Defendant correctly notes that this Court, "like all
federal courts, is a court of limited jurisdiction." <u>Sakar
Int'l, Inc. v. United States</u>, 516 F.3d 1340, 1349 (Fed. Cir.
2008) (citation omitted).  A plaintiff "invoking that [limited]
jurisdiction bears the burden of establishing it." <u>Norsk Hydro
Canada, Inc. v. United States</u>, 472 F.3d 1347, 1355 (Fed. Cir.
2006) (citation omitted).

      Moreover, § 1581(i) is a "'residual' grant," <u>Fujitsu
Gen. Am., Inc. v. United States</u>, 283 F.3d 1364, 1371 (Fed. Cir.
2002) (citation omitted), a "'catch all'," which allows this

---

[16] 28 U.S.C. § 1581(c) gives this Court jurisdiction over actions
commenced under 19 U.S.C. § 1516a, which includes appeals of
Commerce's final determinations in CVD investigations, 19 U.S.C.
§ 1516a(a)(2)(B)(i).

[17] Defendant also argues that Plaintiff could and should have
sought administrative review of its entries, making jurisdiction
under § 1581(i) unavailable.  While Plaintiff could have done so
and such participation might have altered its CVD rate, this
does not affect the jurisdictional analysis here.  Plaintiff's
claim is a challenge to the application of the CVD investigation
rate, not the review rates, to its entries.  It is a
"fundamental premise of periodic administrative reviews that
each 'administrative review is a separate exercise of Commerce's
authority that allows for different conclusions based on
different facts in the record.'" <u>Albemarle Corp. & Subsidiaries
v. United States</u>, 821 F.3d 1345, 1357 (Fed. Cir. 2016) (quoting
<u>Qingdao Sea-Line Trading Co. v. United States</u>, 766 F.3d 1378,
1387 (Fed. Cir. 2014)).

Court to "take jurisdiction over designated causes of action
founded on other provisions of law," Norcal/Crosetti Foods, Inc.
v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992) (citation
omitted).  "Section 1581(i) jurisdiction may not be invoked when
jurisdiction under another subsection of § 1581 is or could have
been available, unless the remedy provided under that other
subsection would be manifestly inadequate." Miller & Co. v.
United States, 824 F.2d 961, 963 (Fed. Cir. 1987).[18]  The court's
analysis of jurisdiction considers the "substance, not form" of
the complaint, to determine the "true nature of the action,"
Williams v. Sec'y of Navy, 787 F.2d 552, 557 (Fed. Cir. 1986)
(internal quotation marks and citation omitted),[19] to ensure that
the plaintiff does not "expand a court's jurisdiction by
creative pleading," Norsk Hydro, 472 F.3d at 1355.

        Nonetheless, §§ 1581(i)(2) and (4) give this Court
"exclusive jurisdiction of any civil action commenced against
the United States, its agencies, or its officers, that arises
out of any law of the United States providing for" the

_____

[18] See Hartford Fire Ins. Co. v. United States, 544 F.3d 1289,
1292 (Fed. Cir. 2008); Otter Prods., LLC v. United States, __
CIT __, 37 F. Supp. 3d 1306, 1313 (2014).

[19] Hartford Fire, 544 F.3d at 1293 ("Just as we must look to the
true nature of the action in a district court in determining
jurisdiction on appeal, the trial court was correct to look to
the true nature of the action in determining jurisdiction at the
outset.").

"administration and enforcement" of "tariffs, duties, fees, or
other taxes on the importation of merchandise for reasons other
than the raising of revenue." 28 U.S.C. §§ 1581(i)(2), (4).
Because countervailing duties are imposed "for reasons other
than the raising of revenue," such as "protect[ing] American
industries against unfair trade practices," see Canadian Wheat
Bd. v. United States, 641 F.3d 1344, 1351 (Fed. Cir. 2011)
(citation omitted), if a plaintiff challenges the cash deposit
or liquidation instructions "issued by Commerce to implement a
final [AD or CVD] order, review is available under 28 U.S.C. §§
1581(i)(2), (4)," Belgium v. United States, 551 F.3d 1339, 1347
(Fed. Cir. 2009) (citation omitted).[20]

       Here, Capella challenges Commerce's "decision in the
[December 20, 2012 cash deposit instructions] to apply the
lawful [cash] deposit rate" only prospectively, for entries made
on or after December 10, 2012, "when there was such an extreme
disparity between" the 374.15 percent investigation rate and the
post-MacLean-Fogg rate. Am. Compl., ECF No. 32-1, at ¶ 50.

---

[20] See Consol. Bearings Co. v. United States, 348 F.3d 997, 1002
(Fed. Cir. 2003) ("Commerce's liquidation instructions direct
Customs to implement the final results of administrative
reviews.  Consequently, an action challenging Commerce's
liquidation instructions is not a challenge to the final
results, but a challenge to the 'administration and enforcement'
of those final results.  Thus, [plaintiff] challenges the manner
in which Commerce administered the final results. Section
1581(i)(4) grants jurisdiction to such an action.").

Plaintiff similarly challenges "Commerce's decision in [the July 27, 2012 and July 16, 2013 automatic liquidation instructions] to order liquidation of entries [made] before December 10, 2012" at the 374.15 percent investigation rate rather than the "lawful rate," as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Id. at ¶ 52.[21]

---

[21] Defendant argues that Plaintiff's challenge to this first set of liquidation instructions is not timely and therefor should be dismissed. Def.'s Br., ECF No. 40, at 19-20; Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss & Mot. for Summ. J., ECF No. 53, at 12-13.

   Actions brought pursuant to 28 U.S.C. § 1581(i) are subject to a two-year statute of limitations. 28 U.S.C. §§ 2636(i), 2632(a). While this statute of limitations is not jurisdictional, claims or actions that do not comply are still subject to dismissal. Ford Motor Co. v. United States, 811 F.3d 1371, 1376-78 (Fed. Cir. 2016). The statute of limitations begins to run when a cause of action accrues. Hair v. United States, 350 F.3d 1253, 1260 (Fed. Cir. 2003). A cause of action accrues "when the aggrieved party reasonably should have known about the existence of the claim." Mitsubishi Elecs. Am., Inc. v. United States, 44 F.3d 973, 978 (Fed. Cir. 1994) (internal citation and quotation marks omitted). "[A]s a general rule, a § 1581(i) cause of action begins to accrue when a claimant has, or should have had, notice of the final agency act or decision being challenged." Ford Motor Co. v. United States, __ CIT __, 992 F. Supp. 2d 1346, 1356 (2014) (citation omitted), aff'd, 811 F.3d 1371 (Fed. Cir. 2016).

   According to its own complaint, Plaintiff had actual notice "on August 11, 2012," via Notice of Action letters sent by Customs, that its entries were to be liquidated pursuant to the automatic liquidation instructions in the first administrative review at the investigation all-others rate, 374.15 percent, not the post-MacLean-Fogg rate. Am. Compl., ECF No. 32-1, at ¶ 15 (citing Notices of Action (dated Aug. 1, 2012, Oct. 3, 2012, and Oct. 16, 2012; it is unclear whether "August 11, 2012" is a clerical error) reproduced in Compl., ECF No. 2-1 at attach. 7). Plaintiff at that time reasonably should have known that its

(footnote continued)

Capella thus does not challenge the calculation of the all-others CVD rate itself, but the way Commerce administers and enforces that CVD rate – specifically, Capella seeks a change in who is retroactively entitled to the benefit of the "lawful rate" following redetermination. <u>See</u> Am. Compl., ECF No. 32-1, at ¶ 34 ("Capella challenges the failure of Commerce to set the effective date of the amended all-others rate retroactive to [the date of the preliminary determination]").[22]   Whether Plaintiff is actually entitled to that "lawful rate" absent participation in the 19 U.S.C. § 1516a(a)(2)(B)(i) challenge that resulted in that redetermined "lawful rate" is another question,[23] as discussed below.

---

entries would not be liquidated at the "lawful rate" it now seeks.  The November 18, 2014 summons and complaint challenging that liquidation were not filed within the two year period commencing August 1 or August 11, 2012.  Plaintiff's claim against the first automatic liquidation instructions is therefore untimely and should be dismissed as such.  Further, even if were timely, it would be dismissed, with the rest of Plaintiff's complaint, pursuant to USCIT Rule 12(b)(6). <u>See</u> <u>infra</u>.

[22] <u>See</u> <u>Hutchison Quality Furniture, Inc. v. United States</u>, Appeal No. 2015-1900 at 8 (Fed. Cir. July 6, 2016) ("Determining the true nature of an action under § 1581 requires us to discern the particular agency action that is the source of the alleged harm so that we may identify which subsection of § 1581 provides the appropriate vehicle for judicial review.").

[23] <u>Bell v. Hood</u>, 327 U.S. 678, 682 (1946) ("Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy.  If the court does later exercise its jurisdiction
(footnote continued)

    As Plaintiff's action is a challenge to the

"administration and enforcement" of "[CVD] duties," <u>see</u>

28 U.S.C. §§ 1581(i)(2), 1581(i)(4), and "jurisdiction under

another subsection of § 1581" is not available, this Court has

jurisdiction over Plaintiff's action pursuant to 28 U.S.C.

§ 1581(i). <u>Cf.</u> <u>Snap-on, Inc. v. United States</u>, __ CIT __,

949 F. Supp. 2d 1346, 1352 (2013).


II.  <u>Defendant's Motion to Dismiss Pursuant to USCIT Rule
     12(b)(6) For Failure to State a Claim[24]</u>

    A complaint must be dismissed when it fails to present

a "legally cognizable right of action," <u>Bell Atl. Corp. v.

Twombly</u>, 550 U.S. 544, 555 (2007)[25] (quotation marks and citation

omitted), or does not, through factual allegations, "elevate a

claim for relief to the realm of plausibility," <u>Laguna Hermosa</u>

---

to determine that the allegations in the complaint do not state
a ground for relief, then dismissal of the case would be on the
merits, not for want of jurisdiction." (citation omitted));
<u>Special Commodity Grp. on Non-Rubber Footwear from Brazil, Am.
Ass'n of Exps. & Imps. v. Baldrige</u>, 6 CIT 264, 267,
575 F. Supp. 1288, 1292 (1983) ("Whether or not a complaint
states a claim upon which relief may be granted should not be
confused with the threshold question of the jurisdiction of the
court over the subject matter.").

[24] <u>See</u> USCIT R. 12(b)(6) ("[A] party may assert the . . .
defense[] [of] . . . failure to state a claim upon which relief
can be granted [by motion].").

[25] <u>See</u> <u>Hutchison Quality Furniture</u>, Appeal No. 2015-1900 at 10
n. 4 ("[Plaintiff] fails to assert a claim for which relief
could be granted because it has not based its claim for relief
on a plausible legal theory.").

Corp. v. United States, 671 F.3d 1284, 1288 (Fed. Cir. 2012)

(citing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Twombly,

550 U.S. at 565-71).  In considering a 12(b)(6) motion, all the

factual allegations in the complaint are taken as true. Hemi

Grp., LLC v. N.Y.C., 559 U.S. 1, 5 (2010).  If, however,

Plaintiff alleges such facts as to defeat its own claim,

"pleading itself out of court," NicSand, Inc. v. 3M Co.,

507 F.3d 442, 458 (6th Cir. 2007), then the complaint must be

dismissed.

As noted above, Plaintiff claims that it was

"arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law"[26] for Commerce to not retroactively apply

the post-MacLean-Fogg all-others rate (the "lawful rate") to its

entries, regardless of its failure to participate in that

litigation, because of the "extreme disparity" between the

applied all-others rate (374.15 percent ad valorem) and the

post-MacLean-Fogg all-others rate (137.65 percent at the time of

the cash deposit instructions,[27] 7.37 percent at the conclusion

---

[26] Where the court has jurisdiction pursuant to 28 U.S.C. §
1581(i), it will uphold the agency's determination unless it is
"arbitrary, capricious, an abuse of discretion, or otherwise not
in accordance with law." 5 U.S.C. § 706(2)(A); see 28 U.S.C. §
2640(e) (Actions brought under § 1581(i) are reviewed "as
provided in [§] 706 of title 5.").

[27] See Timken Notice, 77 Fed. Reg. at 74,467.

of the <u>MacLean-Fogg</u> litigation[28]).  Am. Compl., ECF No. 32-1, at
¶¶ 34, 43, 50, 52.

 Plaintiff, however, has failed to present a "legally
cognizable right of action."  <u>See</u> <u>Twombly</u>, 550 U.S. at 555
(citation omitted).  Specifically, 19 U.S.C. §§ 1516a(c)(1),
1516a(e) expressly and unambiguously instruct Commerce to assess
the investigation rate, not the post-<u>MacLean-Fogg</u> rate, on
Plaintiff's entries.[29]  This is true because Plaintiff's entries
were made prior to publication of the Timken Notice and
liquidation of Plaintiff's entries has not been suspended
pursuant to <u>MacLeanFogg</u>, Consol. Ct. No. 11-209.

 When Commerce issues a CVD order, the statute requires
"the posting of a cash deposit, bond, or other security . . .
for each entry of the subject merchandise in an amount based on
the [applicable] estimated [rate]," here, the all-others rate,
as calculated in the precipitating investigation. 19 U.S.C.

---

[28] <u>See</u> [Fourth] Results of Redetermination Pursuant to Ct.
Remand, Consol. Ct. No. 11-209, ECF Nos. 124-1 (conf. ver.) &
125-1 (pub. ver.).

[29] <u>Shinyei Corp. of Am. v. United States</u>, 355 F.3d 1297, 1307-08
(Fed. Cir. 2004) ("Thus, under [19 U.S.C. § 1516a]'s parallel
liquidation and injunction provisions, subject merchandise that
is entered prior to publication of the final decision of the
Court of International Trade or [the CAFC] is liquidated as
entered unless liquidation is enjoined.  In contrast,
merchandise entered after the final decision of the Court of
International Trade or [the CAFC] must be liquidated in
accordance with that final decision." (citing 19 U.S.C. §§
1516a(c), 1516a(e))).

§ 1671d(c)(1)(B)(ii); see also id. at § 1671e(a)(3).  This

estimated rate is called the cash deposit rate.[30]  The cash

deposit rate is not necessarily the rate at which an entry is or

will be liquidated.[31]  Rather, "an interested party" who was a

"party to [Commerce's investigation]," may appeal the

calculation of the cash deposit rate to this Court. 19 U.S.C. §

1516a(a)(2)(A)(ii).  If such an appeal results in a revised

rate, then those entries for which liquidation is enjoined

pursuant to that appeal will be liquidated at the revised rate.

Id. at § 1516a(e)(2).  This is what the plaintiffs in MacLean-

Fogg, Consol. Ct. No. 11-209 accomplished for their covered

entries.[32]

        "Unless [] liquidation is enjoined by the court [in a

---

[30] See Decca Hosp. Furnishings, LLC v. United States, 30 CIT 357,
358, 427 F. Supp. 2d 1249, 1251 (2006) ("As mentioned, the cash
deposit rate is merely an estimate of the eventual liability
importers subject to an antidumping duty order will bear.
Because the rate established by the final determination is based
on past conduct, i.e., conduct occurring before the final
determination, interested parties to an antidumping duty
proceeding may ask Commerce to annually review the antidumping
duty order in light of an importer's current practices.").

[31] See Sioux Honey Ass'n v. Hartford Fire Ins. Co., 672 F.3d
1041, 1047 (Fed. Cir. 2012) ("[T]he cash deposits collected upon
entry are considered estimates of the duties that the importer
will ultimately have to pay as opposed to payments of the actual
duties.").

[32] See MacLean-Fogg, 106 F. Supp. 3d at 1357 (ordering that "any
entries covered by Section 516A(e)(1) of the Tariff Act of 1930,
as amended, 19 U.S.C. § 1516a(e)(1) (2012), are to be liquidated
in accordance with this judgment").

pending appeal], entries of merchandise of the character covered

by [Commerce's appealed] determination" entered "on or before

the date of publication in the Federal Register by [Commerce] of

a [Timken Notice]," are "liquidated in accordance with

[Commerce's original] determination." 19 U.S.C. § 1516a(c)(1).

Those entries for which "liquidation . . . was enjoined" or that

were made "after the date of publication in the Federal

Register" of the Timken Notice, are "liquidated in accordance

with the final court decision in the action." Id. at

§ 1516a(e).[33]  But entries made prior to the Timken Notice and

for which liquidation has not been enjoined are subject to

Commerce's original determination.  This cash deposit turned

liquidation rate persists unless administrative review is

requested. 19 U.S.C. §§ 1675(a)(1), 1675(a)(2)(C).[34]

     An interested party may challenge the cash deposit

rate by requesting Commerce conduct an administrative review of

its entries that were subject to that cash deposit rate – to

---

[33] See Snap-on, __ CIT __, 949 F. Supp. 2d at 1354.

[34] See Consol. Bearings, 348 F.3d at 1005-06 ("If the review did
not examine a particular importer's transaction, then that
importer's entries enjoy no statutory entitlement to the rates
established by the review."); Mitsubishi, 44 F.3d at 976-77 ("If
an interested party wants Commerce to assess duties at the
actual, rather than the estimated, rate of dumping, it may
request administrative review of the duties under [19 U.S.C. §
1675]. If no party makes such a request, Commerce instructs
Customs automatically to assess duties at the estimated rate.").

calculate the actual rate. 19 U.S.C. § 1675(a)(1).  But a review

must be requested. Id.[35]  If it is not, entries are liquidated at

the cash deposit rate. Mitsubishi, 44 F.3d at 976-77.[36]  The

final determination in an administrative review is "the basis

for the assessment of countervailing [] duties on entries of

merchandise covered by the determination and for deposits of

estimated duties," the cash deposit rate, for entries made by

the party thereafter. 19 U.S.C. § 1675(a)(2)(C).

        Plaintiff, by its own admission in its complaint, did

not participate in the litigation challenging the Final CVD

Determination rate, MacLean-Fogg, Consol. Ct. No. 11-209;

liquidation of its entries was never enjoined pursuant to that

litigation. Am. Compl., ECF No. 32-1, at ¶ 7.[37]  Further, and

---

[35] See Asociacion Colombiana de Exportadores de Flores v. United States, 916 F.2d 1571, 1576 (Fed. Cir. 1990).

[36] See also J.S. Stone, Inc. v. United States, 27 CIT 1688, 1698-99, 297 F. Supp. 2d 1333, 1344 (2003), aff'd, 111 F. App'x 611 (Fed. Cir. 2004) ("Normally, the only means an interested party has of ensuring that it receives the actual antidumping duty rate is through participation in the antidumping review. . . . If an importer decides not to participate in an administrative review, it bears the risk that Commerce may err in calculating the dumping margin.").

[37] Plaintiff asserts that it did not know about the Final CVD Determination, CVD Order, and subsequent first review because its customs broker did not advise it of such. Am. Compl., ECF No. 32-1, at ¶¶ 7, 10.  However, publication in the Federal Register of the Final CVD Determination, CVD Order and opportunity for administrative review, see CVD Order, 76 Fed. Reg. 30,653; AR1 Opportunity, 77 Fed. Reg. 25,679; AR2 Opportunity, 78 Fed. Reg. 25,423, is "sufficient to give notice
                                              (footnote continued)

again by Plaintiff's own admission in its complaint, Plaintiff

did not participate in either administrative review relevant to

its entries. Am. Compl., ECF No. 32-1, at ¶¶ 10, 22.  Plaintiff

has thereby "plead [it]self out of court by alleging facts that

show there is no viable claim." Pugh v. Tribune Co., 521 F.3d

686, 699 (7th Cir. 2008) (citation omitted).  Specifically, by

the plain statutory language "entries of merchandise of the

character covered by" the Final CVD Determination, entered "on

or before the date of publication in the Federal Register" of

the Timken Notice, for which "liquidation [has not been]

enjoined" in the appeal of the Final CVD Determination, MacLean-

Fogg, Consol Ct. No. 11-209, must be "liquidated in accordance

with the [Final CVD Determination]," 19 U.S.C. §§ 1516a(c)(1),

1516a(e),[38] absent a request for administrative review, 19 U.S.C.

§§ 1675(a)(1), 1675(a)(2)(C).  All of Plaintiff's entries at

issue here were made prior to the Timken Notice, see Timken

---

of the contents of the document to a person subject to or
affected by it," 44 U.S.C. § 1507, such as Capella, see Deseado
Int'l, Ltd. v. United States, 600 F.3d 1377, 1380 (Fed. Cir.
2010); Stearn v. Dep't of Navy, 280 F.3d 1376, 1384-85 (Fed.
Cir. 2002); Royal United Corp. v. United States, 34 CIT 756,
767-68, 714 F. Supp. 2d 1307, 1318 (2010).

[38] See Asociacion Colombiana, 916 F.2d at 1577 ("We do not
question the authority of the Administration, pursuant to its
regulation, to liquidate entries for an annual review period at
the rate set in the original antidumping duty order when there
has been no challenge to the validity of that order and no
request for an annual review."); Snap-on, 949 F. Supp. 2d at
1354.

Notice, 77 Fed. Reg. 74,466; CF-7501's, reproduced in Compl.,

ECF No. 2-1 at attach. 5; Protest, 4601-14-101149 (July 14,

2014), reproduced in Compl., ECF No. 2-1 at attach. 15, and

their liquidation was not enjoined pursuant to the MacLean-Fogg

litigation, see Am. Compl., ECF No. 32-1, at ¶ 7.  Plaintiff did

not seek administrative review of its entries. Id. at ¶¶ 10, 22.

Accordingly, the only lawful rate for Plaintiff's entries, the

rate required by statute, is the rate as calculated in the Final

CVD Determination, 374.15 percent ad valorem. See 19 U.S.C.

§§ 1516a(c)(1), 1516a(e), 1675(a)(1), 1675(a)(2)(C).

        "Congress has directly spoken to the precise question

at issue," Chevron, U.S.A., Inc. v. Natural Res. Def. Council,

Inc., 467 U.S. 837, 842 (1984), and Commerce, having complied

with that directive for Plaintiff's entries, has made a

determination in accordance with law, that is neither arbitrary

and capricious[39] nor an abuse of discretion.[40]  Plaintiff has "not

---

[39] Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut.
Auto. Ins. Co., 463 U.S. 29, 43 (1983) ("Normally, an agency
rule would be arbitrary and capricious if the agency has relied
on factors which Congress has not intended it to consider,
entirely failed to consider an important aspect of the problem,
offered an explanation for its decision that runs counter to the
evidence before the agency, or is so implausible that it could
not be ascribed to a difference in view or the product of agency
expertise.").

[40] Star Fruits S.N.C. v. United States, 393 F.3d 1277, 1281 (Fed.
Cir. 2005) ("An abuse of discretion occurs where the decision is
based on an erroneous interpretation of the law, on factual
findings that are not supported by substantial evidence, or
                                        (footnote continued)

based its claim for relief on a plausible legal theory."

<u>Hutchison</u>, Appeal No. 2015-1900 at 10 n. 4.  Its complaint must

be dismissed for failure to state a claim upon which relief can

be granted. USCIT Rule 12(b)(6).

### CONCLUSION

Because Plaintiff did not participate in the <u>MacLean-</u>

<u>Fogg</u> litigation, and did not have liquidation of entries

enjoined pursuant thereto, it cannot, claim entitlement to the

rate as calculated therein on remand and redetermination.

Am. Compl., ECF No. 32-1, at ¶ 7; <u>see</u> 19 U.S.C. §§ 1516a(c)(1),

1516a(e)(2).  As such, Plaintiff has failed to state a claim

upon which relief can be granted; Defendant's motion to dismiss

under USCIT Rule 12(b)(6) is therefore granted.  Judgment will

be entered accordingly.

/s/Donald C. Pogue
Donald C. Pogue, Senior Judge

Dated: July 20, 2016
      New York, NY

---

represents an unreasonable judgment in weighing relevant
factors." (citation omitted)).